# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### 3:13cv693

| | | |
|---|---|---|
| **GARRY CARROLL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| **CONTINENTAL AUTOMOTIVE, INC.** | ) | |
| **And PENSION PLAN FOR HOURLY-** | ) | |
| **PAID EMPLOYEES OF** | ) | |
| **CONTINENTAL AUTOMOTIVE, INC.** | ) | |
| **AND CERTAIN AFFILIATE** | ) | |
| **COMPANIES,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

Pending before the Court are the Motions for Summary Judgment [# 19 & # 21]. Plaintiff brought this action pursuant to the Employee Retirement Income Security Act (ERISA) asserting claims for wrongful denial of benefits and failure to produce documents. The parties filed cross motions for summary judgment, which the District Court referred to this Court. Upon a review of the record and the relevant legal authority, the Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Summary Judgment [# 19] and **DENY** Defendants' Motion for Summary Judgment [# 21].

1

## I.     Factual Background

Plaintiff Garry Carroll was born on July 3, 1959, and began working for Continental Tire North America, Inc. ("Continental Tire") on February 12, 1979. (Worthington Decl. at ¶¶ 15, 18.)  As a Continental employee, Plaintiff was eligible to participate in the Pension Plan for Hourly-Paid Employees of Continental Automotive, Inc. and Certain Affiliated Companies ("Pension Plan" or "Plan").  (Id. at ¶ 7.)   The Pension Plan provides, among other things, for retirement benefits for covered employees who satisfy the Pension Plan's eligibility requirements.  (Worthington Decl. Ex. A, at §§ 4.1-4.7.)   These benefits are funded from a Trust Fund financed exclusively by contributions from Continental Automotive, Inc. to the Trust Fund's Trustee.  (Id. at §§ 1.14, 1.60, 1.61, 11.1, 11.3, 11.6.)

Continental Tire laid Plaintiff off with recall rights on December 13, 2008, as the result of the indefinite suspension of tire production at the Charlotte, North Carolina facility.  (Worthington Decl. at ¶ 11; Pl.'s Compl. at ¶ 10; Defs.' Answer at ¶ 10; Worthington Decl. Ex. B, at D00043, D00282.)   After Plaintiff's recall rights expired, Continental Tire terminated Plaintiff's employment on December 13, 2010.  (Pl.'s Compl. at ¶ 13; Defs.' Answer at ¶ 13; Worthington Decl. Ex. B, at D00282.)

After Plaintiff's termination, he applied for Regular Early Retirement under the Pension Plan. (Worthington Decl. Ex. B, at D00001-3.) On April 5, 2013, Benefits Analysts Jean Harvell sent Plaintiff a letter informing Plaintiff that he was not eligible for Regular Early Retirement under the Pension Plan because he was only 51 years old with 29.8361 years of service when Continental Tire terminated his employment. (Id. at D00004.) Harvell also informed Plaintiff that the period of time Plaintiff was laid off with recall rights did not count towards his years of service. (Id.) Harvell enclosed a copy of the Pension Plan Summary Plan Description in the letter to Plaintiff. (Id. at D00004.)

After Continental Tire denied Plaintiff's claim for Regular Early Retirement, Plaintiff, through his attorney, provided notice of his intent to appeal the decision by letter dated April 19, 2013. (Id. at D00034-35.) Plaintiff's attorney also requested the administrative record connected with the claim for benefits. (Id.) Approximately six weeks later, Plaintiff's attorney sent a follow up letter again requesting the administrative record. (Id. at D00037-39.) This May 30, 2013, letter also constituted Plaintiff's administrative appeal of the decision denying him benefits. (Id.; Worthington Decl. at ¶ 25.) On June 14, 2013, Rob Wilder, the Director of Compensation and Benefits, acknowledged receipt of Plaintiff's appeal and provided Plaintiff's counsel copies of the Pension Plan, the Summary Plan

Description, and the Notice of Removal from Payroll from Plaintiff's personnel file. (Worthington Decl. Ex. B, at D00042-271.) According to Wilder, these were the only documents relied on in denying Plaintiff's initial claim for Regular Early Retirement. (Id. at D00042.)

The Pension Committee then reviewed Plaintiff's appeal. (Worthington Decl. at ¶ 30.) In reviewing Plaintiff's appeal, the Pension Committee considered the Pension Plan materials and the letter and materials submitted by Plaintiff's counsel. (Id. at ¶ 31; Worthington Decl. Ex. B, at D00282.) Upon review, the Pension Committee upheld the denial of Plaintiff's request for Regular Early Retirement. (Worthington Decl. Ex. B, at D00286.) The Pension Committee determined that where an individual is laid off and does not return to active employment, the period of layoff is not included as vesting service. (Id. at D00283-85.) Specifically, the Pension Committee determined that:

> Based upon the Pension Committee's review of the Plan and the SPD, your period of layoff, from which you were not rehired, was period of severance that is not included as vesting service. This is consistent with the definition of Termination of Employment in the Plan, where an employee who is not rehired within two years of the date of his layoff is deemed to have a Termination of Employment; however an employee who is rehired during that same time frame is determined to have not terminated employment for any period of his layoff. Read together, the Plan and SPD, provide a clear basis for including, as vesting service, periods of layoff, but only where the individual is rehired. The Pension Committee, therefore, interprets the Plan and SPD to only provide vesting service where individuals return to regular employment

following layoff.  Consequently, the Pension Committee concluded that the Plan and SPD do not grant Vesting Eligibility of Service to those employees who have a period of absence (including layoff), from which the employee is not rehired and which eventually results in a Termination f Employment.

(Worthington Decl. Ex. B, at D00284-85.)  In addition, the Pension Committee determined that no Discontinuance of Operations, as that term is used in Section 8.5 of the Pension Plan, occurred.  (Id. at D00286.)

After the Pension Plan affirmed the denial of Plaintiff's request for Regular Early Retirement, Plaintiff brought this action pursuant to ERISA.  Plaintiff seeks review by this Court of the decision of the Pension Committee.  The parties then filed cross motions for summary judgment, which the District Court referred to this Court.  These motions are now properly before the Court for a Memorandum and Recommendation to the District Court.

## II.    The Pension Plan

Section 4.2 of the Pension Plan sets forth the criteria for Regular Early Retirement. (Worthington Decl. Ex. A, at § 4.2.)  Specifically, the Pension Plan provides that:

> **4.2    <u>Regular Early Retirement</u>.**  Except as otherwise provided in the relevant Schedule of Benefits, a Member who continues in the employ of a Participating Entity or an Affiliate until he:
>
> > **(a)**    has attained age fifty-five (55) and has completed

at least ten (10) full years of Vesting and Eligibility Service; or

**(b)** has completed at least thirty (30) full years of Vesting and Eligibility Service, regardless of his age;

shall be eligible to retire and receive a retirement benefit commencing on the first day of any month on or after the date of early retirement, as he shall select in writing, in such form as is provided in Article V, and in the amount provided in Article VI.

(Id.)

The Pension Plan specifically defines Vesting and Eligibly Service.

**1.62** **<u>Vesting and Eligibility Service</u>**. For any Employee, the aggregate of all such Employee's period of Continuous Service; however, Vesting and Eligibility Service shall:

**(a)** Exclude any period of Continuous Service that was cancelled under the Prior Plan;

**(b)** Exclude any period of Continuous Service prior to a Termination of Employment if all of the following apply:

**(1)** the Employee was not entitled to retirement or Deterred Vested Benefits under this Plan or the Prior Plan on the date of Termination of Employment; and

**(2)** the Employee's Period of Severance equals or exceeds five (5) years; and

**(3)** the Employee's Vesting and Eligibility Service (determined under this Section 1.62 as of the date of Termination of Employment) is less than or equal to the Period of Severance the Employee incurred following the Termination of

6

Employment.

    **(4)**    If any period is excludable from an Employee's Continuous Service under both (a) and (b) above, it shall be excluded only once;

    **(c)**    Include any Periods of Severance (measured from the date of Termination of Employment until the subsequent date of rehire) where the Employee is rehired within twelve (12) months of the earlier of:

    **(1)**    date of a Termination of Employment; or

    **(2)**    the first day of any period of absence for any other reason, after the end of which the Employee did not return to work for a Participating Entity or an Affiliate prior to the Termination of Employment.

(Id. at § 1.62.)

Continuing Service constitutes "any period . . . during which [the Employee] was employed by a Participating Entity or any Affiliate. Each such period shall be measured from the Employee's Date of Hire to his date of Termination of Employment. (Id. at § 1.15.)

The Pension Plan also defines Termination of Employment.

    **1.56**  **Termination of Employment**. With respect to an Employee, a Termination of Employment occurs upon the earlier of:

    **(a)**    the date the Employee quits, retires, is discharged, or dies; or

    **(b)**    the first anniversary of the date the Employee was absent for any other reason; however . . .

**(4)** if the Employee is absent due to layoff, has accrued 180 days of Continuous Service prior to the commencement of such layoff, is eligible for recall rights, and does not return to active employment within two (2) years, a Termination of Employment will occur on the earlier of:

**(i)** the second anniversary of the date the Employee was absent due to such layoff; or

**(ii)** the date upon which the Employee's period of absence due to such layoff equals the period of Continuous Service accrued by the Employee prior to such layoff;

**(5)** an Employee will not incur a Termination of Employment for the following periods of absence . . .

**(iv)** absence due to layoff where the Employee returns to active employment within two (2) years; provided, however, the credit for Continuous Service the Employee will receive for the period of absence due to layoff will be equal to the lesser of: the Employee's period of absence due to layoff, or the Employee's Continuous Service accrued prior to such layoff.

(<u>Id.</u> at § 1.56.)

## III. Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of some alleged factual dispute between the parties will not defeat a motion for summary. <u>Anderson v. Liberty</u>

Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003). Rather, there must be a genuine issue of material fact. Dash v. Mayweather, 731 .3d 303, 310-11(4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248, 106 S. Ct. 2510. Finally, in deciding a motion for summary judgment, the Court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). The Court, however, may consider the other materials in the record. Id.

## IV. Analysis

### A. The Pension Committee Abused its Discretion in Denying Plaintiff's Request for Regular Early Retirement

ERISA provides that a plan participant or beneficiary may bring a civil action to recover benefits he or she is due under the plan's terms, to enforce his or her rights under the plan, or to clarify his or her rights to future benefits under the plan's terms. 29 U.S.C. § 1132(a)(1)(B). The scope of this Court's review of an action challenging a coverage determination by a plan administrator under Section 1132(a)(1)(B) depends on the scope of discretionary authority granted a plan administrator by the benefit plan. Helton v. AT&T Inc., 709 F.3d 343, 351 (4th

9

Cir. 2013). Where a plan does not give the plan administrator discretionary authority, the Court reviews a coverage determination de novo. Id.; Williams v. Metro. Life Ins. Co., 609 F.3d 622, 629 (4th Cir. 2010). In contrast, if the benefit plan vests the plan administrator with discretionary authority to make eligibility determinations for plan beneficiaries, the Court reviews the administrator's decision under the more lenient abuse of discretion standard. Harrison v. Wells Fargo Bank, N.A., 773 F.3d 15, 20 (4th Cir. 2014); Helton, 709 F.3d at 351.

Under an abuse of discretion standard, the Court will uphold the decision of a plan administrator if the decision is reasonable, even if the Court would have reached the opposite conclusion upon an independent review. Fortier v. Principal Life Ins. Co., 66 F.3d 231, 235 (4th Cir. 2012); Williams, 609 F.3d at 630. A decision is reasonable where the decision "is the result of a deliberate, principled reasoning process, and is supported by substantial evidence. . . ." Helton, 709 F.3d at 351 (internal quotations and citation omitted). The Court may not substitute its judgment for that of the plan administrator. Williams, 609 F.3d at 630. Thus, the initial question for the Court is whether to review the decision to deny Plaintiff benefits under the Pension Plan de novo or for abuse of discretion.

Here, the Pension Plan provided the Plan Administrator with discretionary authority to make eligibility determinations. (Worthington Decl. Ex. A, at §13.1.)

Section 13.1 of the Pension Plan provides that:

> The Plan Administrator shall determine any and all questions of fact, resolve all questions of interpretation of this instrument which may arise under any of the provisions of the Plan, and exercise all other powers and discretion necessary to be exercised under the terms of the Plan which it is herein given. In rendering its decision, the Plan Administrator shall have full power and discretion to interpret this Plan, to resolve ambiguities, inconsistencies and omissions, and to determine the right to benefits of, and the amount of benefits, if any, payable to the applicant in accordance with the provisions of this Plan.

Because the Pension Plan vested the Plan Administrator with discretionary authority to make eligibility determinations for plan beneficiaries, the Court must review the decision to deny Plaintiff benefits under the Pension Plan for abuse of discretion. See Harrison, 773 F.3d at 20; Helton, 709 F.3d at 351.

In assessing whether or not plan administrators abuse their discretion, the United States Court of Appeals for the Fourth Circuit has set forth a nonexhaustive list of factors for courts to consider. Harrison, 773 F.3d at 20; Williams, 609 F.3d at 630. These factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000); see also Harrison, 773 F.3d at 20; Fortier, 666 F.3d at 235-36. The award of benefits under any ERISA plan, however, is first and foremost governed by the language of the plan itself. Lockhard v. United Mine Workers of Am. 1894 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993); Steamship Trade Ass'n Int'l Longshoremen's Ass'n, (AFL-CIO) Benefits Trust Fund, (AFL-CIO) v. Bowman, 247 F.3d 181, 182 (4th Cir. 2001).

Generally, when the Court reviews a plan administrator's coverage decision for abuse of discretion, the Court only considers the evidence in the administrative record. Helton, 709 F.3d at 352. "The rationale for this rule is that, to the extent possible, the administration of ERISA plans should be left to plan fiduciaries, not federal courts." Id. The Court, however, may also consider evidence that was known to the plan administrator when it rendered a decision, even if that evidence was not part of the actual administrative record, when the extrinsic evidence is necessary to adequately assess the Booth factors. Id. at 356. Finally, a "plan administrator can be charged with knowledge of information acquired by its employees in the scope of their employment and the contents of its books and records." Id.

Plaintiff contends that the Pension Committee erred by not finding that he

met the requirements for obtaining Regular Early Retirement. It is undisputed that Plaintiff was not fifty-five when Continental Tire terminated his employment. Thus, the question for the Court is whether the Plan Administrator abused its discretion when it determined that Plaintiff had not completed the required thirty years of eligible service to qualify for Regular Early Retirement.

Even where a plan confers discretion on a plan administrator to construe the terms of the plan, the administrator may not alter the terms of the plan or construe unambiguous terms other than as they are written in the plan. Savani v. URS Prof'l Solutions, LLC, 592 F. App'x 166, 171 (4th Cir. 2014); Adams v. Louisiana-Pacific Corp., 177 F. App'x 335, 343 (4th Cir. 2006). "If a denial of benefits is contrary to the clear terms of the plan, the plan administrator's determination 'will constitute an abuse of discretion.'" Adams, 177 F. App'x at 343 (quoting Lockhart, 5 F.3d at 78). Where a plan's terms are clear and unambiguous, the plan administrator's discretionary authority is not implicated. Kress v. Food Emps' Labor Relations Ass'n, 391 F.3d 563, 567 (4th Cir. 2004).

Upon a review of the record, and after consideration of the relevant legal authority, the Court finds that the Plan Administrator abused its discretion in finding that Plaintiff was not entitled to Regular Early Retirement. The clear language of the Pension Plan provides that Plaintiff was eligible for Regular Early

Retirement, and the Pension Committee's determination that Plaintiff had not obtained thirty years of eligible service prior to his termination is not supported by the clear language of the Plan.

In order to qualify for Regular Early Retirement, Plaintiff needed to obtain at least thirty full years of Vesting and Eligibility Service. (Worthington Decl. Ex. A, at § 4.2.) Vesting and Eligibility Service constitutes the total of Plaintiff's period of Continuous Service. (Id. at § 1.62.) The time period from Plaintiff's Date of Hire until his date of Termination of Employment constitutes Plaintiff's period of Continuous Service. (Id. at § 1.15.)

It is undisputed that Plaintiff's Date of Hire is February 12, 1979. It is also undisputed that Continental Tire laid Plaintiff off with recall rights on December 13, 2008. After Plaintiff's recall rights expired, Continental Tire terminated Plaintiff's employment on December 13, 2010. Pursuant to the plain language of Section 1.56 of the Pension Plan, Plaintiff's date of Termination of Employment was the second anniversary of the date Plaintiff was absent due to the layoff, or December 13, 2010. Accordingly, Plaintiff had over thirty years of Continuous Service and thirty years of Vesting and Eligibility Service. Moreover, none of the provision of Section 1.62 of the Pension Plan exclude any of Plaintiff's Continuous Service from the definition of Vesting and Eligibility Service.

The Pension Committee's reliance on Section 1.62 and the Summary Plan Description to find that Plaintiff's period of layoff was actually a severance, and that the period of layoff was not included as Vesting and Eligibility Service is contradicted by the plain language of the Pension Plan and was erroneous. A Period of Severance is "a period commencing on a Termination of Employment and ending on the date such Employee is rehired by a Participating Entity or any Affiliate." (Id. at § 1.39.) A Period of Severance can only occur after an employee's Termination of Employment. (Id.) Thus, no Period of Severance could have started to run for Plaintiff until the second anniversary of the date Plaintiff was absent due to layoff. Moreover, Period of Severance ends the date the employee is rehired, and it is undisputed that Plaintiff was not rehired. (Id.) The Pension Committee's determination that Plaintiff's period of layoff with recall rights was actually a Period of Severance was erroneous, contrary to the plain, unambiguous language of the Plan, and an abuse of discretion.

The Pension Committee's determination that periods of layoff that occur prior to a Termination of Employment count as Vesting and Eligibility Service only where the employee is rehired is also plainly contradicted by the clear language in the Pension Plan. The specific terms of the Pension Plan provide for the inclusion of Plaintiff's period of layoff prior to his Termination of Employment

as Vesting and Eligibility Service. To hold otherwise is to render meaningless the language in the Pension Plan, and the Pension Committee may not avoid the clear language of the Pension Plan by reclassifying Plaintiff's layoff as a severance in contrast to the terms of the Pension Plan or by interpreting the terms of the Pension Plan in a manner that is contradicted by the Pension's Plan's specific terms. The Plan's terms are not ambiguous and there is no need to look outside the language of the Plan to make a determination as to whether Plaintiff was eligible for Regular Early Retirement.

Similarly, the Pension Committee's determination that Plaintiff's period of layoff is not Vesting and Eligibility Service because Plaintiff was not a Covered Employee during that time period is also contrary to the plain terms of the Pension Plan. The relevant portions of the Pension Plan refer only to an Employee, which the Plan defines as "a person who is a common law employee of the Participating Entity or an Affiliate." (Id. at § 1.25.) It is undisputed that Plaintiff was an Employee during the relevant time period. In fact, Plaintiff's Termination of Employment did not occur until 2010. (Id. at § 1.56.) Moreover, the Pension Committee may not alter the terms of the Pension Plan to create requirements that would contradict the plain language of the Plan. See Adams, 177 F. App'x at 343. Pursuant to the plain, unambiguous terms of the Pension Plan, Plaintiff's period of

layoff constitutes Vesting and Eligibility Service, and Plaintiff was entitled to receive Regular Early Retirement. Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Summary Judgment as to Plaintiff's claim for benefits and **DENY** Defendant's Motion for Summary Judgment.

## B. Plaintiff is Entitled to an Award of Civil Penalties

ERISA requires that upon a written request by a plan participant or beneficiary, a plan administrator shall "furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Where an administrator fails to comply with a request for this information within thirty days, the Court may, in its discretion, award civil penalties in the amount of up to $100.00 per day. 29 U.S.C. § 1032(c)(1); See also Faircloth v. Lundy Packing Co., 91 F.3d 648, 659 (4th Cir. 1996); Mullins v. AT&T Corp., 424 F. App'x 217, 225 (4th Cir. 2011). The purpose of this provision of ERISA "is not to compensate participants for injuries, but to punish noncompliance with ERISA." Faircloth, 91 F.3d at 659; see also Davis v. Featherstone, 97 F.3d 734, 738 (4th Cir. 1996) ("The purpose of the penalty provision is to provide plan administrators

with an incentive to meet requests for information in a timely fashion.").

Although prejudice to the party requesting the documents is not a prerequisite to an award of civil penalties, the Court may consider whether the requesting party suffered any prejudice.  Id.  The Court may also consider whether the plan administrator acted in bad faith.  Id.  As the Fourth Circuit explained in Davis:

> Two factors generally guide a district court's discretion: prejudice to the plaintiff and the nature of the administrator's conduct in responding to the participant's request for plan documents. Although prejudice is a pertinent factor for the district court to consider, it is not a prerequisite to imposing a penalty.

97 F.3d at 738.

 Plaintiff, through his attorney, requested a copy of the Administrative Record connected with Plaintiff's request for benefits, including "the pension policy, the Summary Plan Description, claim processing notes and other documents relied upon by Continental and any other claims fiduciaries in denying the claim" on April 19, 2013.  (Worthington Decl. Ex. B, at D00034-35.)   On May 30, 2013, Plaintiff's attorney sent a follow up letter again requesting the documents.  (Id. at D00037-39.)  On June 14, 2013, the Director of Compensation and Benefits, acknowledged receipt of Plaintiff's appeal and provided Plaintiff's counsel a copy of the Pension Plan, a copy of the Summary Plan Description, and a

copy the Notice of Removal from Payroll from Plaintiff's personnel file. (Worthington Decl. Ex. B, at D00042-271.)

Here, the Plan Administrator failed to comply with its statutory obligation to provide the requested information within thirty days. In fact, the Director of Compensation and Benefits only produced the documents after receiving a second letter from Plaintiff's attorney referencing ERISA's civil penalty provision for non-compliance. Consistent with the purpose behind the statute to punish noncompliance, see Faircloth, 91 F.3d at 659; Davis, 97 F.3d at 738, the Court finds that an award of civil penalties is appropriate in this case. Because the Court also finds that Plaintiff did not suffer any real prejudice from the delay in producing the requested documents, the Court will reduce the amount of the award. Upon a review of the record and the relevant legal authority, the Court finds that an award of $50.00 a day starting on May 20, 2013, the thirty-first day after Plaintiff requested the documents, and ending on June 14, 2013, is appropriate in this case. Accordingly, Plaintiff is entitled to an award of $1300.00 pursuant to 29 U.S.C. § 1032(c)(1).

## V. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Summary Judgment [# 19] and **DENY** Defendants' Motion for

Summary Judgment [# 21].  The Court also **RECOMMENDS** that the District

Court **AWARD** Plaintiff $1300.00 pursuant to 29 U.S.C. § 1032(c)(1).

Signed: August 31, 2015

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).